Theodore C. SWARTZ, Plaintiff,

v.

KPMG, LLC; Presidio Growth, LLC; Presidio Advisory Services, Inc., Hayes Street Management, Inc.; Norwood Holdings, Inc., Deutsche Bank AG; Deutsche Bank Securities, Inc., Sidley Austin Brown & Wood, LLP; Dale R. Baumann; John M. Larson; Robert A. Pfaff, David Amir Makov; Steven Buss; and R.J. Ruble, and their respective marital communities, if any, Defendants.

No. C03–1252P.

United States District Court,
W.D. Washington,
at Seattle.

Feb. 13, 2004.

---

Duncan Calvert Turner, Randall C. Johnson, Jr., Badgley Mullins Law Group, Jonathan P. Meier, Richard E. Spoonemore, Sirianni Youtz Meier & Spoonemore, Seattle, WA, for Plaintiff.

Charles J. Ha, Heller Ehrman LLP, Rudy Albert Englund, Lane Powell PC, Jessica L. Goldman, Summit Law Group, Seattle, WA, Chaya F. Weinberg–Brodt, Rachel B. Kane, Stephen L. Ascher, William J. Schwartz, Kronish Lieb Weiner & Hellman LLP, Stuart E. Abrams, Frankel & Adams, New York, NY, Brad D. Brian, Jonathan E. Altman, Richard E. Drooyan, Susan R. Szabo, Lisa J. Demsky, Munger, Tolles, & Olson, LLP, Los Angeles, CA, for Defendants.

ORDER ON MOTIONS TO DISMISS RE: CLAIMS FOR RICO, FRAUD, CONSPIRACY, BREACH OF CONTRACT, WASHINGTON CONSUMER PROTECTION ACT, NEGLIGENT MISREPRESENTATION, BREACH OF FIDUCIARY DUTY AND PROFESSIONAL MALPRACTICE

PECHMAN, District Judge.

The Court, having received and reviewed:

1. Motion of Sidley Austin Brown & Wood LLP and R.J. Ruble to Dismiss

2. Plaintiff's Opposition to Motion of Defendants Sidley Austin Brown & Wood LLP and R.J. Ruble to Dismiss

3. Reply of Defendants Sidley Austin Brown & Wood LLP and R.J. Ruble to Dismiss

4. Defendants KPMG LLP's and Dale R. Baumann's Motion to Dismiss Plaintiff's Complaint

5. Plaintiff's Opposition to KPMG and Baumann's Motion to Dismiss Complaint

6. Defendants KPMG LLP's and Dale R. Baumann's Reply Brief in Support of Motion to Dismiss Plaintiff's Complaint

7. Defendants Presidio Growth, LLC's and Presidio Advisory Services, Inc.'s Notice of Motion and Motion to Dismiss

8. Plaintiff's Legal Memorandum in Opposition to Motion to Dismiss of Presidio Defendants

9. Defendants Presidio Growth, LLC's and Presidio Advisory Services, Inc.'s Reply Memorandum in Support of Defendants' Motion to Dismiss

10. Notice of Subsequent Authority Submitted by Defendants Presidio Growth, LLC's and Presidio Advisory Services, Inc.'s in Support of Motion to Dismiss

11. Defendants Deutsche Bank AG and Deutsche Bank Securities, Inc.'s Notice of Motion and Motion to Dismiss and Memorandum of Law in Support Thereof

12. Plaintiff's Opposition to Deutsche Bank's Motion to Dismiss

13. Defendants Deutsche Bank AG and Deutsche Bank Securities, Inc.'s Reply Memorandum in Further Support of Motion to Dismiss

and all declarations and exhibits attached thereto. Following oral argument, the Court announced that it was granting de-

fendants' motions "in total." Upon further reflection, in consideration of all the issues and arguments raised orally and in writing, it is apparent that a complete dismissal is not warranted at this stage. Therefore, the Court makes the following ruling:

IT IS HEREBY ORDERED that plaintiff's RICO, fraud, negligent misrepresentation, breach of contract, declaratory judgment and Washington Consumer Protection Act claims will be dismissed with prejudice; his claim of breach of fiduciary duty against defendant KPMG will be dismissed with prejudice as well. The motion to dismiss for lack of personal jurisdiction filed by defendants Presidio Advisory Services, Inc., Deutsche Bank AG and Deutsche Bank Securities, Inc. will be GRANTED. Because those three defendants were only named in regards to causes of action which are being dismissed with prejudice, there is no point in permitting plaintiff to amend and plead sufficient jurisdictional facts as regards them.

IT IS FURTHER ORDERED that the motion is DENIED as to the following: the claim of breach of fiduciary duty against defendant Brown & Wood, the claim of professional malpractice against defendants KPMG and Brown & Wood, and the claim of conspiracy as it relates to the professional malpractice claim.

IT IS FURTHER ORDERED that plaintiff and the remaining defendants are to conduct initial discovery pursuant to FRCP 26(f) and submit a Joint Status Report to the Court by no later than March 26, 2004.

## I. Background

Plaintiff has brought a series of RICO and state law claims against a variety of defendants. Some of the defendants have not appeared; some of them have been voluntarily dismissed. Pending before the Court are a series of motions to dismiss brought by the remaining defendants in the action.

In July of 1999, plaintiff realized approximately $18 million in profits from the sale of a business. His broker at Merrill Lynch referred him to defendant KPMG ( a major accounting firm) for tax planning advice. The strategy they promoted to him was a plan called BLIPS (Bond Linked Issue Premium Structure) which was designed to create artificial economic losses which would offset his capital gains and diminish his tax liability. Prior to entering into the transaction, plaintiff signed a written "engagement letter-agreement" with KPMG which disclosed the potential risks of the plan and acknowledged that results were not guaranteed.

The transactions comprising the BLIPS plan occurred between September 30 and November 29, 1999. KPMG arranged a line of credit with defendant Deutsche Bank ("DB") in the amount of $53 million for a company called Gascoyne LLC (which KPMG had set up for Swartz). Plaintiff claims this was not a true loan (DB had final approval over the use of the funds and required a 1.0125:1 ratio of collateral to loan), although loan fees were charged.

The line of credit was contributed by Gascoyne to a new limited liability company, Longs Strategic Investment Fund ("Longs")—Swartz was a 90% owner of this company, with defendants Presidio Growth. LLC and Presidio Advisory Services, Inc. ("Presidio") owning the other 10% and exercising control over the fund management. Two foreign currency trades were conducted by Presidio.

On November 30, 1999, Longs was dissolved. A number of shares of Microsoft stock which had been "contributed" by Gascoyne were returned along with tax opinion letters from KPMG and the law firm of defendant Brown & Wood ("B &

W"[1]) stating that the shares had a basis equal to any capital contributed to Long's, which had the effect of creating an "artificial short term capital loss."

On December 27, 1999, the IRS issued a notice concluding that the BLIPS tax plan did not produce bona fide deductions for income tax purposes. On September 5, 2000, an additional notice was issued regarding variations on the plans covered in the original notice and expanding the potential penalties for participation in or promotion of such schemes to include criminal liability.

On December 31, 1999, KPMG and B & W issued tax opinions indicating their belief that it was "more likely than not" that BLIPS would be upheld if challenged by the IRS. When plaintiff's original accounting firm withdrew from preparation of his tax returns, KPMG prepared them.

Plaintiff's 2000 tax return (filed in October 2000) claimed the BLIPS transaction as a write-off, despite the fact that (as the complaint alleges) plaintiff was aware by August 2000 that the claimed deductions were questionable. Plaintiff filed two subsequent tax returns (in 2001 and 2002) in which he had the opportunity to, but did not, amend the claimed BLIPS deduction.

On June 6, 2003, plaintiff initiated this lawsuit with a complaint charging the defendants with violations of RICO and the Washington Consumer Protection/Unfair Business Practices Act, as well as fraud, negligent misrepresentation, breach of contract, professional negligence, breach of fiduciary duty and conspiracy.

The IRS did eventually challenge plaintiff's claim of loss via the BLIPS transaction. Not until after the complaint was filed in this case did they finally disallow the claimed deduction. Although plaintiff has paid the back taxes and accrued interest, he has not alleged that any penalties have been assessed against him. In fact, nowhere has plaintiff alleged that the IRS action against him has been finalized. Other damages alleged by plaintiff include the fees he paid to the various co-defendants, professional fees paid to mitigate the damages which defendants allegedly caused and the money he might have saved if he had tried to mitigate his tax burden through legitimate means.

## II. STANDARD OF REVIEW

The Court reviews these motions pursuant to the requirements of FRCP 12(b). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cervantes v. United States,* 330 F.3d 1186, 1187 (9th Cir.2003); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss. *See Warren,* 328 F.3d at 1139; *Associated Gen. Contractors v. Metropolitan Water Dist. of S. California,* 159 F.3d 1178, 1181 (9th Cir.1998); *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir.1996). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See No. 84 Employer–Teamster Joint Council v. America West Holding Corp.,* 320 F.3d 920, 931 (9th Cir.2003); *In re Zimmer,* 313 F.3d 1220, 1222 (9th Cir. 2002); *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002); *Wyler Summit Partnership v. Turner Broadcasting System,* 135 F.3d 658, 661 (9th Cir.1998).

---

**1.** The firm name was later changed to Sidley Austin Brown & Wood and it was under this name that they were sued.

## III. DISCUSSION

The defendants alleged multiple grounds for dismissal in their motions. In the case of those claims which the Court finds cannot be rehabilitated through amendment (i.e., there is no conceivable set of facts under which plaintiff could state a claim upon which relief may be granted), the opinion will discuss only those grounds for dismissal which are incurably fatal.

### A. RICO CLAIMS

#### 1. Effect of Private Securities Litigation Reform Act

█ In 1995, Congress amended the RICO statute to eliminate securities fraud as a predicate act upon which to base a RICO claim. Private Securities Litigation Reform Act ("PSLRA") § 107, Pub.L.No. 104–67, 109 Stat. 737 (1995). "No person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [18 U.S.C.] section 1962." 18 U.S.C. § 1964(c).

The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if, as is the case here, the claim is plead as a matter of mail fraud or wire fraud. See Howard v. America Online Inc., 208 F.3d 741, 749–50 (9th Cir.2000), cert. denied, 531 U.S. 828, 121 S.Ct. 77, 148 L.Ed.2d 40 (2000). The exclusion applies even if the RICO plaintiff could not have asserted the securities fraud claim himself. Id.

The distribution of the Microsoft shares following the dissolution of Longs involved, according to plaintiff's complaint, allegedly fraudulent representations by the defendants and therefore is actionable as securities fraud. Plaintiff seeks to characterize the foreign currency transaction which was used to claim the purported loss as outside the bounds of securities law, ignoring the definition of "securities" found in 15 U.S.C. § 77b(a)(1) which includes "any . . . stock" and "any . . . option relating to foreign currency."

That oversight aside, plaintiff's argument that there can be no 10b–5 securities fraud "in connection with" the purchase or sale of a security unless the misrepresentation touches upon a decline in the securities' value (i.e., that the securities themselves must somehow be the object of the alleged fraud) is not supported by case law. The Supreme Court has made it clear that the "in connection with" requirement of 10b–5 is satisfied if "the scheme to defraud and the sale of securities coincide" and that neither the SEC nor the Supreme Court has ever required a misrepresentation about a stock's value in order to activate the statutory prohibitions. (SEC v. Zandford, 535 U.S. 813, 822, 122 S.Ct. 1899, 153 L.Ed.2d 1 [(2002)]); the Ninth Circuit is in accord (Walling v. Beverly Enterp's, 476 F.2d 393, 396 [(9th Cir. 1973)] ).

Plaintiff's attempt to persuade the Court that the PSLRA is inapplicable to this transaction because the sale of the Microsoft stock was somehow "an incidental attribute of the fraud" (Plaintiff's Opposition to KPMG Motion, p. 12) is unavailing. From plaintiff's own description of the scheme in his complaint, the sale of the securities was clearly central to the intended result; i.e., without the sale of the Microsoft stock, there would have been no corresponding loss to offset his capital gains. It is evident that this alleged fraud was "in connection with" the sale of securities and therefore within the purview of 10b–5 and the PSLRA.

In a case nearly identical to the one before this Court, a Florida federal district court found that the plaintiff's RICO claims were likewise barred by the PSLRA. Loftin v. KPMG et al., 2003 WL 22225621, 16 Fla. L. Weekly Fed. D 712 (S.D. Fla Sept. 10, 2003). The court there

found that the fact that "the alleged misrepresentations were unrelated to the value of the securities [did] not foreclose application of the PSLRA bar," nor did the fact that the defendants themselves were not issuers of the securities. *Id.* at *11.

The Ninth Circuit has also applied 10b–5 to securities transactions marketed as "tax shelters" and held that the PSLRA barred a RICO suit where plaintiffs were neither buyers or sellers of the stock (*Howard v. AOL, supra* ). Plaintiff disagrees with the *Howard* holding but has not argued that it is not binding precedent on this Court. The Eleventh and Eighth Circuits are in accord: misconduct which induces plaintiffs to engage in a stock transaction (regardless of whether they would have standing to sue for securities fraud) satisfies the "in connection with" requirement. *Behlen v. Merrill Lynch,* 311 F.3d 1087 (11th Cir.2002); *Dudek v. Prudential Sec., Inc.,* 295 F.3d 875 (8th Cir.2002).

The end result of these line of cases is inescapable: the sale of plaintiff's Microsoft stock in connection with this allegedly fraudulent tax shelter scheme brings it squarely within the ambit of a cause of action for securities fraud, thereby rendering it ineligible to be prosecuted pursuant to the statutory scheme of RICO.

### 2. *No Fraud in the Absence of Reasonable Reliance*

■ Plaintiff has predicated his RICO claim on mail and wire fraud; an essential element of fraud is proof of reasonable reliance on allegedly fraudulent statements. *See Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1360–61 (11th Cir.2002); *Summit Properties, Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556, 560, 562 (5th Cir. 2000); *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368 (2nd Cir.1992); *Martin v. Dahlberg, Inc.,* 156 F.R.D. 207, 215 (N.D.Cal.1994). Plaintiff alleges oral misrepresentations from defendants regarding

the outcome of the BLIPS strategy, but such representations cannot establish reasonable reliance as a matter of law where there are written documents which contradict any oral statements. *See Zobrist v. Coal–X, Inc.,* 708 F.2d 1511, 1518–19 (10th Cir.1983); *Townsend v. Columbia Operations,* 667 F.2d 844, 850 (9th Cir.1982); *Moniz v. General Motors Corp.,* 2000 WL 1375285, at *5 (N.D.Cal.2000), *aff'd without opinion,* 23 Fed.Appx. 855, 2002 WL 22343 (9th Cir.2002).

The complaint acknowledges that plaintiff was advised of the possibility of an audit. Complaint, ¶ 40. This advisement took the form of an "engagement letter," presented by KPMG and signed by an agent of plaintiff, which enumerated in detail the risks of participating in the BLIPS scheme. The letter indicated that this strategy was "aggressive in nature" and involved the possibility of a successful IRS challenge ("the [IRS] might challenge the intended results of the Investment Program and could prevail under any of various tax authorities"). Declaration of Ward, Exh. 1. As a matter of law, plaintiff cannot establish reasonable reliance in the face of such a document. The Ninth Circuit has already held that a plaintiff who enters into a transaction knowing that there are a range of possible outcomes cannot state a RICO claim simply because he received a less favorable outcome within the stated range. *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1087 (9th Cir.2002).

Plaintiff claims that a "non-disclosure" provision in the engagement letter prevented him from discussing the details of the strategy with a third party, but defendants point out that the provision only required plaintiff to obtain their consent before initiating such a discussion. Plaintiff does not allege, in his complaint or his

briefing, that he ever requested such consent.

Furthermore, plaintiff is not entitled to rely on KPMG's "promise" that it would deliver tax opinion letters from itself and B & W; such a promise is not a "representation of an existing fact" and cannot form the basis for a fraud claim. *Stiley v. Block,* 130 Wash.2d 486, 505–06, 925 P.2d 194 (1996); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP,* 110 Wash. App. 412, 436, 40 P.3d 1206 (2002).

Finally, it is evident from the face of the complaint itself that, prior to filing his initial post-BLIPS tax return in October of 2000, plaintiff was aware that his accountant (Moss Adams) had called his entire tax reduction strategy into question. He received the B & W opinion letter in December of 1999. Complaint ¶ 54. On August 25, 2000, his accountants sent him a letter "questioning the validity and legitimacy of the tax opinions provided to [plaintiff] by KPMG and Brown & Wood," advising him of the contents of IRS Notice 2000–44 and offering their opinion that the IRS would not consider the BLIPS transactions to constitute a bona fide loss. Complaint ¶¶ 64–65. His accountant then resigned on October 10, 2000 based on its belief that the tax returns were invalid. Complaint ¶ 67. Nowhere in plaintiff's briefing is there an explanation of how he reasonably relied on any alleged misrepresentations by defendants in the wake of this information.

Additionally, as described in plaintiff's complaint, he received a letter from defendant KPMG advising him that the anticipated BLIPS tax advantages "might be disallowed by the IRS." Complaint ¶ 68. Not only did he file his 2000 tax return claiming the BLIPS transactions as a deduction anyway, he filed returns in 2001 and 2002 without amending that claim. Plaintiff cannot, as a matter of law, estab-lish the critical fraud requirement of reasonable reliance in the face of such facts.

**B.  FRAUD**

■  The analysis above regarding the absence of reasonable reliance in plaintiff's pleading of fraud as a predicate to his RICO claim is equally applicable to his cause of action for fraud. The Court finds that the failure to establish that plaintiff reasonably relied on any allegedly fraudulent misrepresentations by defendants is fatal to Count 3 of his complaint as well, and that there are no conceivable set of facts plaintiff could plead which would establish a claim upon which the Court could grant relief.

**C.  WASHINGTON    CONSUMER
       PROTECTION ACT**

■  A successful Consumer Protection Act ("CPA") claim requires the establishment of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) that injures the plaintiff in his or her business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531 (1986). Plaintiff is unable to state a claim under two of these five elements.

*1.  No "capacity to deceive"*

■  An act or practice is "unfair or deceptive" under the CPA only if it has the capacity to deceive "a substantial portion" of the public. *Henery v. Robinson,* 67 Wash.App. 277, 289–91, 834 P.2d 1091 (1992). The number of consumers who could conceivably find themselves in plaintiff's circumstances—looking for a tax savings on millions of dollars of capital gains—is extremely small and unable to

qualify as "a substantial portion of the public" under any reasonable definition of that term. As a matter of law, conduct directed toward a small group cannot support a CPA claim. *Id.* at 291, 834 P.2d 1091; *see also Micro Enhancement,* 110 Wash.App. at 438–439, 40 P.3d 1206.

### 2. *The public interest is not affected*

For reasons similar to those stated above, plaintiff cannot establish that his dilemma is one which affects the public interest. The tribulations of multimillionaires are not the focus of the legislative intent behind the CPA; as a (very small) group, the extremely wealthy are neither unsophisticated nor easily subject to chicanery. *See Goodyear Tire & Rubber Co. v. Whiteman Tire Inc.,* 86 Wash.App. 732, 935 P.2d 628 (1997), where a CPA claim was dismissed on public interest grounds based on a finding that the plaintiff was "not representative of bargainers vulnerable to exploitation." *Id.* at 745, 935 P.2d 628.

There being no conceivable set of facts under which plaintiff could satisfy either of these elements, his claim under the Washington CPA must be dismissed.

### D. *BREACH OF CONTRACT*

■ Plaintiff alleges at Count 5 of his complaint that defendants KPMG and B & W breached oral and written contracts with him "to provide... professionally competent tax advice, legal services, accounting services and tax return preparation services, to exercise the applicable standard of care, loyalty and honesty and to comply with all applicable rules of professional contact [*sic* ]."

B & W point out that Washington law holds that "legal malpractice is not a liability express or implied arising out of a written agreement unless the agreement guarantee[s] a specific result or assures[s] the effect of legal services." *Davis v.*

*Davis, Wright, Tremaine, LLP,* 103 Wash. App. 638, 650, 14 P.3d 146 (2000), *citing Busk v. Flanders,* 2 Wash.App. 526, 530, 468 P.2d 695 (1970). The complaint does not allege that the contract guaranteed a result; any promises to provide "professionally competent... advice [and] services" or "to exercise the applicable standard of care..." are therefore nothing more than "implied duties of counsel to client that do not arise from [a] contract." *Id.* at 655, 468 P.2d 695.

Plaintiff's rebuttal to this argument—that B & W are liable on a contract theory as the agent of defendant KPMG—is puzzling to say the least. "An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal... does not thereby become liable for its nonperformance." Rest.2d, Agency § 328. An agent is not liable for the contractual duties of its principal. The breach of contract claim will be dismissed as to B & W.

■ As regards defendant KPMG, the breach of contract allegations amount to nothing more than the re-framing of a negligence or malpractice claim against the accounting firm: violation of a duty of care owed from a professional to a client. The engagement letter did not specifically promise any of the things that plaintiff is alleging as breaches of contract and in fact promised no specific result at all. Given the known facts, there is no conceivable set of circumstances under which plaintiff could state a claim for breach of contract against KPMG under which relief could be granted. That cause of action will be dismissed against KPMG as well.

### E. *DECLARATORY JUDGMENT*

. ■ Plaintiff's claim for declaratory judgment (Count 6) will likewise be dismissed with prejudice. Obviously, as regards the dismissed defendants, the issue

of a declaratory judgment is a nullity. Similarly, to the extent that plaintiff seeks a declaration that any tax penalties which he might be assessed in the future are the responsibility of defendant, his claim is subject to dismissal pursuant to 12(b)(6). In order to maintain a claim under the Declaratory Judgment Act, "a plaintiff must establish standing by showing 'that there is a substantial controversy, between parties have adverse interest, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" *Scott v. Pasadena Unified School District*, 306 F.3d 646, 658 (9th Cir.2002); *see also Aydin Corp. v. Union of India*, 940 F.2d 527, 529 (9th Cir.1991). A declaratory judgment is "not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir.1999) [quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) ]. Any assessment of penalties against the plaintiff by the IRS remains a future event which may not occur as anticipated, if at all.[2]

As for the remainder of that cause of action, it appears to this Court that the request is merely duplicative of his request for damages for the other causes of action. His request for a "declaration that Defendants are liable to Swartz for such penalties, interest, professional fees, and damages" (Complaint ¶ 109) is puzzling. If defendants are found liable, damages will be assessed according to the proof adduced by plaintiff; if plaintiff does not prevail on his other causes of action, there will be no judgment, declaratory or otherwise, forthcoming in his behalf. His request that the

KPMG engagement letter be declared void and unenforceable (Complaint, ¶ 110) is completely lacking in any citation to statutory or case authority or any other legal basis on which the requested relief might be granted.

The above causes of action (RICO, fraud, Washington Consumer Protection Act and breach of contract) will be dismissed with prejudice against all defendants; i.e., plaintiff will not be given an opportunity to amend his complaint. The Court has determined that, as regards those claims, plaintiff could not allege any set of facts consistent with the facts already before the Court which could possibly cure the defects of his pleading and, on that basis, leave to amend will not be granted. *See Schreiber Dist. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995). Since dismissal of the above-cited claims eliminates all defendants but KPMG and B & W (and their associated individual defendants, Baumann and Ruble), the civil conspiracy and declaratory judgment claims against all other defendants will be dismissed with prejudice as well.

### F. *BREACH OF FIDUCIARY DUTY*

. The existence of a fiduciary relationship is not simply a matter of "reposing trust and confidence in the integrity of another... There must be additional circumstances, or a relationship that induce the trusting party to relax the care and vigilance which he would ordinarily exercise for his own protection." *Moon v. Phipps*, 67 Wash.2d 948, 954, 411 P.2d 157 (1966). When the parties are dealing with

---

**2.** The Court notes that the loss of the value of whatever benefits Swartz was to have received from the BLIPS transaction is not compensable in any event. *See Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir.1987) (no RICO claim for disallowed tax

shelter); and *Jones v. Childers*, 1992 WL 300845, at \*23 (M.D.Fla.1992), *aff'd in part, rev'd in part*, 18 F.3d 899 (11th Cir.1994) (back taxes are just money owed based on income, "not damages proximately caused by the actions of the Defendants.").

each other "at arm's length," the "special circumstances" which give rise to a fiduciary relationship do not exist. *Tokarz v. Frontier Federal Savings and Loan Ass'n,* 33 Wash.App. 456, 463–64, 656 P.2d 1089 (1982).

Plaintiff argues that the allegations that KPMG "sought and obtained [his] confidence" and then obtained a non-disclosure agreement from him comprise sufficient pleadings to establish a fiduciary duty. But, as plaintiff alleges in his own complaint, KPMG did not "seek him out," rather he was referred to them by his broker at Merrill Lynch. Complaint, ¶ 32. Nor does plaintiff ever controvert defendants' assertion that he never requested consent of the defendants to consult a third party as he was entitled (and advised) to do under the agreement.

None of the facts before this Court suggest anything other than an arm's-length bargaining relationship between these parties, nor are there any conceivable set of facts which plaintiff could plead that would establish the possibility that a multimillionaire with $18 million in capital gains could find himself in an unequal bargaining position with a tax adviser. Count 2 alleging a breach of fiduciary duty on the part of defendant KPMG is hereby dismissed.

■ B & W did not address, either in its written pleadings or in oral argument before the Court, the issue of whether plaintiff had a viable claim for breach of fiduciary duty against them. They do argue, generally, that all of plaintiff's claims fail for lack of causation on the grounds that plaintiff had already engaged in the BLIPS transaction by the time that B & W issued its two letters to him. This argument is not persuasive, primarily because the point at which plaintiff was injured, if at all, occurred when he filed his 1999 income tax return in October 2000 claiming the BLIPS transaction as a bona fide loss for tax purposes. This took place well after B & W's initial opinion letter had been delivered. Since it is a common practice for plaintiffs to plead both legal malpractice and breach of fiduciary duty against attorney-defendants [*see O'Melveny & Myers v. F.D.I.C.,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994); *Old Oakland Partnership I v. Lukens,* 188 F.3d 514 (9th Cir.1999) ] and B & W has made no other argument that the claim is deficient pursuant to 12(b)(6), the claim for breach of fiduciary duty against B & W will not be dismissed.

## G. *NEGLIGENT MISREPRESENTATION/PROFESSIONAL MALPRACTICE*

■ Plaintiff's claim in Count 4 that defendants KPMG and B & W are liable for negligent misrepresentation and professional malpractice runs afoul of some of the same problems as his claims sounding in fraud. Negligent misrepresentation, like fraud, requires a showing of reliance. *Schaaf v. Highfield,* 127 Wash.2d 17, 22, 896 P.2d 665 (1995). As discussed above, there is no conceivable set of facts which plaintiff could adduce which would create a possibility of establishing reasonable reliance based on the evidence already before the Court, and KPMG and B & W are entitled to a dismissal of this cause of action.

■ KPMG argues for dismissal of the professional malpractice claim against it based on the engagement letter signed by plaintiff which indemnifies them "from and against any and all losses, claims, damages and liabilities ... except to the extent caused by gross negligence or intentional misconduct of KPMG." Declaration of Ward, Exh. 1, p. 4. All plaintiff's allegations are framed in the alternative ("knowingly or negligently," "knew or should have known"), and the Court finds that, taking the allegations of material fact as

true and construing them in the light most favorable to plaintiff, it is conceivable that plaintiff could prove a set of facts which would constitute intentional misconduct amounting to professional malpractice (i.e., a violation of the reasonable standard of care expected of all practitioners in the field of accounting). The claim for professional malpractice against KPMG will be permitted to stand.

Again, B & W did not address the legal malpractice claim in its briefing or oral argument, except for the generic "lack of causation" argument which has been disposed of *supra.* Therefore, Count 4, the professional malpractice claim against the defendant-law firm, will not be dismissed.

## H. *CIVIL CONSPIRACY*

■ At Count 8 of his complaint, plaintiff has alleged a civil conspiracy involving all defendants. A civil conspiracy is "a combination of two or more persons to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means." *Harrington v. Richeson,* 40 Wash.2d 557, 573, 245 P.2d 191 (1952) A properly plead conspiracy "must set forth with particularity the facts and circumstances constituting the alleged conspiracy." *Heying v. Simonaitis,* 126 Ill.App.3d 157, 81 Ill.Dec. 335, 466 N.E.2d 1137, 1142 (1984). Conclusory statements will not suffice to state a conspiracy claim. *Reo v. Shudt,* 144 A.D.2d 793, 795, 534 N.Y.S.2d 553 (N.Y.App.Div.1988).

■ A "claim for civil conspiracy is entirely dependent on underlying" substantive claims; where "the underlying claims fail, [the] civil conspiracy claim must also fail." *Oregon Laborers Employers Health & Welfare Trust Fund v. Philip Morris,* 185 F.3d 957, 969 (9th Cir. 1999). Therefore no conspiracy cause of action will lie for the dismissed claims. And, as B & W is the only defendant remaining in the count charging breach of fiduciary duty, no conspiracy allegation is possible regarding that charge, either. The Court will, however, permit the conspiracy count to remain as regards the allegations of professional malpractice which are still extant against defendants KPMG and B & W.

## I. *PERSONAL JURISDICTION*

It is plaintiff's burden to establish that personal jurisdiction over the named defendants exists. *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). Defendants Presidio, Deutsche Bank AG and Deutsche Bank Securities, Inc. have all challenged plaintiff's complaint on the grounds that it fails to establish personal jurisdiction, asserting that Swartz has failed to allege any facts sufficient to establish minimum contacts within this forum sufficient to justify the exercise of personal jurisdiction.

In rebuttal, plaintiff alleges, without citation to particular facts in his complaint or to other evidence, that he has "alleged sufficiently" that these defendants are subject to the Court's general jurisdiction. In the face of defendants' disputation, he requests leave to take "jurisdiction-specific" discovery to establish the existence of jurisdiction.

It is not acceptable for a plaintiff to hale a party into court, then ask leave to conduct discovery to establish that he had a right to do so. If plaintiff had no more than the overbroad, conclusory allegations with which he attempts to justify the exercise of jurisdiction over these parties, they should never have been joined as defendants. The Court finds that there is insufficient basis to establish personal jurisdiction over defendants Presidio, Deutsche Bank AG and Deutsche Bank Securities and dismisses them on that basis.

In any event, all the causes of action for which defendants Presidio, Deutsche Bank AG and Deutsche Bank Securities were

alleged to have been liable have been dismissed. Ultimately, the issue of whether this Court has personal jurisdiction over them is moot.

## IV. Conclusion

Plaintiff has failed to state a claim upon which relief can be granted on his claims of RICO violations, fraud, negligent misrepresentation, Washington CPA violations and breach of contract. There being no conceivable set of facts under which relief could be granted, the dismissal will be with prejudice. This has the effect of dismissing all the remaining defendants from this case except KPMG and B & W (and their individual defendants, Dale R. Baumann and R.J. Ruble).

As regards the remaining defendants, the allegation of breach of fiduciary duty will be dismissed with prejudice against KPMG, as plaintiff can allege no set of facts under which relief could be granted against that defendant. The cause of action for professional malpractice will be allowed to stand against both KPMG and B & W, as will the conspiracy allegation as regards that claim.

Plaintiff and the remaining defendants are ordered to conduct initial discovery pursuant to FRCP 26(f) and submit a Joint Status Report to the Court by no later than March 26, 2004.

The clerk is directed to provide copies of this order to all counsel of record.