# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THEODORE C. SWARTZ,
        *Plaintiff-Appellant,*

    v.

KPMG LLP,

        *Defendant,*

    and

PRESIDIO ADVISORY SERVICES INC.;
DEUTSCHE BANK AG; DEUTSCHE
BANK SECURITIES, INC.,
      *Defendants-Appellees.*

No. 05-35167

D.C. No.
CV-03-01252-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
October 20, 2006—Seattle, Washington

Filed February 12, 2007

Before: Dorothy W. Nelson and Richard A. Paez,
Circuit Judges, and Edward Rafeedie,* District Judge.

Per Curiam Opinion

---

*The Honorable Edward Rafeedie, Senior United States District Judge
for the Central District of California, sitting by designation.

1731

## COUNSEL

Philip A. Talmadge, Anne E. Melley, Talmadge Law Group, Tukwila, Washington, Brian G. Isaacson, The Isaacson Law Firm, Seattle, Washington, for the plaintiff-appellant.

David H. Smith, Garvey Schubert Barber, Seattle, Washington, Lawrence M. Hill, Seth C. Farber, Dianne F. Coffino, Dewey Ballantine LLP, New York, New York, for defendants-appellees Deutsche Bank AG and Deutsche Bank Securities, Inc.

Stephen C. Willey, Savitt & Bruce LLP, Seattle, Washington, Steven M. Bauer, Karli E. Sager, Latham & Watkins LLP, San Francisco, California, for defendant-appellee Presidio Advisory Services, Inc.

## OPINION

PER CURIAM:

## I. INTRODUCTION

This suit arises out of a failed tax shelter, which defendants allegedly sold to plaintiff-appellant Theodore Swartz, charging over a million dollars, even though they knew the scheme would be considered unlawful by the IRS. Among the named defendants were accounting firm KPMG, law firm Sidley Austin Brown & Wood ("B&W"), Deutsche Bank AG and Deutsche Bank Securities (collectively "DB" or "Deutsche Bank"), and Presidio Advisory Services ("Presidio"). Against all defendants, Swartz asserted claims (1) under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, (2) under the Washington Consumer Protection Act ("WCPA"), Wash. Rev. Code § 19.86.010 *et seq.*, (3) for common-law fraud, and (4) for civil conspiracy. Swartz also sought a judicial declaration of defendants' liability for interest and penalties that might have arisen during an IRS audit, incomplete at the time he filed his lawsuit. Swartz advanced separate claims against KPMG and B&W for breach of contract, breach of fiduciary duty, and professional malpractice. In a published order,[1] the district court dismissed all causes of action against Presidio and DB concluding both that Swartz's complaint failed to state any claims upon which relief could be granted and that it contained insufficient allegations to establish personal jurisdiction.[2] Swartz sought leave to cure the substantive and jurisdictional defects in the complaint and to add alternative securities fraud claims. Believing amendment would be futile and that the request was procedurally improper, the district court denied leave to amend. Swartz appeals each of these rulings.[3]

---

[1]*Swartz v. KPMG*, 401 F. Supp. 2d 1146 (W.D. Wash. 2004) (*Swartz I*).

[2]The district court also dismissed many but not all of the claims against the remaining defendants. This appeal concerns only Swartz's claims against Presidio and DB.

[3]Swartz also argues, for the first time on appeal, that the district court should have taken judicial notice of certain documents attached to his opposition to defendants' motions to dismiss. Because he never presented this argument to the district court and has not demonstrated any excep-

With the exception of its holding that the allegations in the complaint ruled out "reasonable reliance" as a matter of law, the district court did not err in *Swartz I* and we adopt its decision in large measure. Specifically, we affirm the district court's dismissal with prejudice of the RICO and WCPA claims as well as the request for declaratory relief because each was properly resolved on grounds independent of the reasonable reliance inquiry and because amendment would be futile in each case.

However, we reverse the district court's denial of leave to amend the common-law fraud and conspiracy claims. Whether Swartz could demonstrate reasonable reliance on defendants' alleged misrepresentations was not properly settled as a matter of law under the allegations in the complaint. Furthermore, even if the original complaint otherwise failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), it would not have been futile for Swartz to amend. Additionally, although the original complaint failed to allege sufficient jurisdictional facts, Swartz should have been given an opportunity to cure this defect through amendment. Finally, Swartz should have been granted leave to add alternative claims for securities fraud.

## II.  BACKGROUND

### A.  Factual Allegations[4]

---

tional circumstances explaining his silence, we decline to address it here. *See United States v. Oregon*, 769 F.2d 1410, 1414 (9th Cir. 1985). We also reject Swartz's invitation to take judicial notice of various documents outside the pleadings. The facts recited in the documents and Swartz's characterization of them are "subject to reasonable dispute" and are therefore not properly noticed. Fed. R. Evid. 201(b).

[4]Because we are primarily concerned with the sufficiency of Swartz's pleadings, we focus on the allegations in his complaint and take them as true for purposes of this appeal. *See Jackson v. Carey*, 353 F.3d 750, 753 (9th Cir. 2003).

In 1999, Swartz sold a business and realized an approximately $18 million gain representing potentially taxable income. KPMG approached Swartz and "lured" him into purchasing a tax-reduction product called BLIPS (Bond Linked Issue Premium Structure), represented as a strategy that would allow Swartz to claim a loss sufficient to offset his capital gain. KMPG advised Swartz of the possibility of an audit, but assured him that KPMG and law firm B&W would provide tax "opinion letters" testifying to the legitimacy of the scheme to the satisfaction of the IRS. According to the complaint, the BLIPS transactions had been devised by KPMG and B&W as a means of charging unwarranted and excessive fees to a " 'select audience' of individuals who had sold large businesses or otherwise incurred large capital gains." Swartz alleged Presidio and DB "were active participants in the conspiracy" and "knew that the series of BLIPS transactions were predetermined steps to generate sham losses for the purpose of obtaining tax benefits." Swartz further alleged that Presidio and DB knew that KPMG and B&W promoted the BLIPS transactions through the allegedly fraudulent representations outlined above and that the defendants acted in concert and as mutual agents.

In fall 1999, Swartz entered into various BLIPS-related contracts including an "engagement letter," executed September 4, 1999, between himself and KPMG. The letter outlined KPMG's role in the transactions, disclosed that the IRS might question the BLIPS losses, and stated that KPMG "would not guarantee tax results, but would provide that . . . there is a greater than 50 percent likelihood . . . that [the promised tax benefits] would be upheld if challenged by the [IRS]." Despite this caveat, Swartz alleged that he reasonably relied on KPMG's oral representations that BLIPS would succeed in eliminating his income tax liability.

The transactions comprising the BLIPS strategy occurred between September 30 and December 13, 1999. Because the details are largely irrelevant, they are recounted here in very

rough form. KPMG and Presidio facilitated the extension of a multi-million dollar line of credit from DB to Swartz. Swartz created a new limited liability company, Longs Strategic Investment Fund ("Longs"), and engaged Presidio as its manager. The credit facility was contributed to Longs. Longs held various assets including a number of shares of Microsoft common stock. After engaging in two foreign currency transactions intended to give Longs the appearance of a legitimate business, Presidio directed that Longs be dissolved. On December 13, 1999, the company was dissolved and the Microsoft stock was transferred to Swartz as part of his ownership assets.

The intended effect of these transactions was to artificially inflate Swartz's basis in the Microsoft stock so that he could sell it and claim a capital "loss" in the amount of the difference between his inflated basis and the value of the stock. In this case, KPMG represented that "the sale of 364 shares of Microsoft stock would trigger a purported 1999 capital loss of [approximately $18 million]." Swartz paid significant fees to defendants to implement these transactions including a $550,000 management fee to Presidio and more than $800,000 in fees and interest to DB.

According to the complaint, on December 27, 1999, the IRS issued a notice concluding that BLIPS did not produce bona fide losses for income tax purposes. Nevertheless, on December 31, 1999, KPMG and B&W issued opinion letters that purported to confirm the propriety of the scheme.

On August 25, 2000, before Swartz filed his 1999 tax return, his independent tax preparation firm, Moss Adams, questioned the validity of the scheme, informing Swartz it believed the IRS would consider the BLIPS losses to be improper. On September 5, 2000, the IRS issued an additional notice reiterating its opinion that BLIPS losses were illegitimate and warning that criminal penalties might attach to individuals who attempted to use them on their tax returns. On

October 4, KPMG advised Swartz that the promised tax bene-
fits might be disallowed by the IRS. In response, Swartz
sought recision of the BLIPS agreements and a monetary
refund. The defendants refused. On October 10, Moss Adams
resigned from its engagement. KPMG then assisted Swartz in
preparing his 1999 return, which reflected deductions for
BLIPS "losses."

At some point thereafter, the IRS commenced an audit of
Swartz's 1999 tax return.[5] Swartz did not amend his 1999 tax
return in 2001 or 2002.

On February 21, 2002, KPMG informed Swartz that it was
under IRS investigation in connection with the BLIPS scheme
and that the IRS had announced an amnesty from certain pen-
alties for individual tax filers who disclosed their involve-
ment. KPMG advised Swartz to make a full disclosure to the
IRS. B&W sent a similar letter on March 5. The complaint
does not indicate whether Swartz took advantage of the IRS
initiative.

### B.   Proceedings Below

On June 6, 2003, Swartz initiated this lawsuit. On February
13, 2004, the district court issued *Swartz I* granting several
Federal Rule of Civil Procedure 12(b)(6) motions including
Presidio's and DB's. As to each cause of action, the court
held there was no conceivable set of facts which could justify
relief and dismissed with prejudice. The court also found
Swartz had not met his burden of pleading personal jurisdic-

---

[5]The IRS had initiated an audit but had not yet disallowed the BLIPS
losses at the time Swartz filed his complaint in June 2003. In September
2003, in opposition to defendants' motions to dismiss, Swartz submitted
a declaration from his then-current tax attorney indicating that the approxi-
mately $17 million loss claimed on Swartz's 1999 tax return had been dis-
allowed. The declaration also indicated that Swartz paid back-taxes and
interest. Swartz has not alleged any penalties have been imposed by the
IRS.

tion and dismissed Presidio and DB from the lawsuit under Rule 12(b)(2). The court added, "[b]ecause [Presidio and DB] were only named in regard[ ] to causes of action which are being dismissed with prejudice, there is no point in permitting plaintiff to amend and plead sufficient jurisdictional facts." *Swartz I*, 401 F. Supp. 2d at 1149.

On March 9, 2004, Swartz sought leave to amend. In support, he proposed an amended complaint adding significant detail to the dismissed claims, supplementing the jurisdictional allegations, and adding alternative causes of action for securities fraud under federal and Washington state law. The district court disallowed amendment of the original claims relying on its February 13, 2004 order.[6] The court also denied leave to add new securities fraud claims. This appeal followed.

## III.  STANDARD OF REVIEW

A trial court's decision to dismiss for failure to state a claim is reviewed de novo, *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th. Cir. 2004), as is a dismissal for lack of personal jurisdiction, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004). Assuming a substantive or jurisdictional defect in the pleadings, "[d]ismissal without leave to amend is proper only if it is clear, upon de novo review, that the complaint could not be saved by any amendment." *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (quotations, citations omitted).

---

[6]Specifically, the district court noted that it had dismissed the original claims with prejudice. The court went on to treat the portion of the motion relating to the dismissed claims as a motion for reconsideration of its February 13, 2004 order. So construed, the motion was time-barred and was otherwise improper. Swartz does not argue that he presented a proper motion for reconsideration. Rather, he argues that he was entitled to amend his complaint notwithstanding the fact that the district court dismissed his claims with prejudice.

## IV. DISCUSSION

### A. The RICO Claim

[1] A civil RICO claim requires allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Swartz's RICO claim was predicated on allegations of mail and wire fraud — namely that the marketing and implementation of the BLIPS scheme was carried out through the use of interstate mail and wire communications systems.

The district court dismissed the RICO claim on two alternative grounds. First, the court held the alleged fraud was "in connection with" the sale of the Microsoft stock and could not form the basis of a RICO claim under section 107 of the Private Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, 758 (1995). Second, the court held that allegations in the complaint foreclosed a finding of "reasonable reliance" — a necessary element for all species of fraud, including mail/wire fraud.

[2] We agree that the PSLRA bars Swartz's claim and hereby adopt the district court's opinion in *Swartz I* to that extent. *Swartz I*, 401 F. Supp. 2d at 1151-52 (Section III. A. 1. "Effect of Private Securities Litigation Reform Act"). Swartz's argument on appeal that the BLIPS transactions were intended to be a swap agreement does not change the fact that the complaint alleges fraud in connection with the sale of securities. Neither was the sale of securities "incidental" to the fraud. The sale of the Microsoft stock was the lynchpin of the BLIPS scheme. The entire purpose of setting up Longs and funding it with the loan proceeds from DB was that, on dissolution, Longs would be able to transfer its assets (the Microsoft stock) to Swartz and his basis in those assets would be artificially inflated by the value of the loan. If Swartz never sold the assets with the inflated basis (the stock)

he would never realize the "loss" that he required to offset his real capital gains. As in *SEC v. Zandford*, "the securities sales and [appellees' alleged] fraudulent practices were not independent events." 535 U.S. 813, 820 (2002).

**[3]** Because the PSLRA bar would apply under any internally consistent set of facts, it would be futile to amend the RICO claim. Consequently, it was not error to dismiss this claim with prejudice. *See Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988) (if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, then . . . dismissal without leave to amend is proper.") (internal quotation, citation omitted). The reasonable reliance holding is addressed below.

## B.   WCPA Claim

**[4]** The district court properly dismissed the Washington Consumer Protection Act claim and we adopt its opinion on that issue. *Swartz I*, 401 F. Supp. 2d at 1153-54 (Section III. C. "Washington Consumer Protection Act"). We note that a scheme marketed to a "select audience" of persons with millions of dollars of capital gains to shield from taxation lacks the capacity to deceive a substantial portion of the public. The claim was properly dismissed with prejudice because amendment would be futile.

## C.   Common-law Fraud Claim

**[5]** Under Washington law, a fraud plaintiff must plead and prove that he justifiably relied on the defendants' misrepresentations. *See Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996); Wash. Pattern Jury Instr. Civ. WPI 160.01 (5th ed.). "Whether a party justifiably relied upon a misrepresentation is an issue of fact." *Alejandre v. Bull*, 98 P.3d 844, 851 (Wash. Ct. App. 2004).

A party's reliance is justified when it is "reasonable under the surrounding circumstances." *ESCA Corp. v. KPMG Peat*

*Marwick*, 959 P.2d 651, 655 (Wash. 1998). An analysis of the "surrounding circumstances" is necessarily fact-intensive and involves multiple considerations. Washington courts have, for example, discussed the plaintiff's education, *Skagit State Bank v. Rasmussen*, 745 P.2d 37, 38 (Wash. 1988), her experience and relative sophistication with the subject matter of the representations, *Puget Sound Nat'l Bank v. McMahon*, 330 P.2d 559, 561 (Wash. 1958), whether the defendant had special expertise, *Westby v. Gorsuch*, 50 P.3d 284, 293 (Wash. Ct. App. 2002), and whether oral misrepresentations were "contradicted" by written documents in the representee's possession, *Williams v. Joslin*, 399 P.2d 308, 309 (Wash. 1965).

[6] The district court first found that because the engagement letter between Swartz and KPMG advised that BLIPS was aggressive in nature and involved the possibility of a successful IRS audit, Swartz was precluded from establishing reasonable reliance. We are unaware of any Washington authority creating a bright-line rule that "[oral] representations cannot establish reasonable reliance as a matter of law where there are written documents which contradict [the] oral statements." *Swartz I*, 401 F. Supp. 2d at 1152.[7] To be sure, the existence of truth-containing documents in a plaintiff's possession ought to be relevant to the question of whether he

---

[7]The non-Washington cases cited by the district court and appellees similarly fail to establish such a rule or are otherwise inapposite. *See e.g. Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002) (addressing injury, not reasonable reliance); *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1159 (9th Cir. 1996) (explicit written statement disclaiming reliance "goes far to defeat" claim but is not dispositive); *Bank of the West v. Valley Nat'l Bank of Ariz.*, 41 F.3d 471, 477-78 (9th Cir. 1994) (bank's explicit written statement that it exercised independent judgment in extending credit undermines claim of reliance); *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1516-17 (10th Cir. 1983) (holding that written statements are *not* determinative but are one factor among many in determining reasonable reliance); *Townsend v. Columbia Operations*, 667 F.2d 844 (9th Cir. 1982) (addressing dismissal on statute of limitations grounds).

reasonably relied on oral falsehoods. But this single factor will usually not be dispositive. *See Stewart v. Estate of Steiner*, 93 P.3d 919, 927 (Wash. Ct. App. 2004) (requiring consideration of multiple factors in context of securities fraud suit).

[7] Even if there were such a rule, it is not at all clear that the engagement letter "contradicts" any oral misrepresentations alleged by Swartz. The gravamen of Swartz's complaint is that the defendants represented BLIPS as an effective tax-avoidance strategy and collected substantial fees to implement the scheme despite knowing that it had no chance of success. While the engagement letter acknowledges the possibility of an audit, it also contains assurances that the plan would more likely than not be upheld over an IRS challenge. Whether this contradicts any oral representations is not self-evident and should not result in a dismissal with prejudice at this stage in the litigation. In addition, Swartz attempted to allege additional misrepresentations by defendants in his proposed amended complaint that may have demonstrated reasonable reliance even in the face of the engagement letter. Although the engagement letter may undermine Swartz's claim of reasonable reliance, we are not prepared, at the motion to dismiss stage, to conclude that the letter demonstrates "*beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief.*" *Osborne v. District Attorney's Office for Third Judicial Dist.*, 423 F.3d 1050, 1052 (9th Cir. 2005) (emphasis added).

Swartz also argues that the district court erred by considering the contents of the engagement letter in deciding the motions to dismiss. The letter itself was proffered in support of KPMG's motion and was arguably a matter outside the pleadings and therefore not cognizable.

We reject Swartz's argument. First, it was not presented to the district court, and indeed was raised for the first time in Swartz's reply brief to this court. The claim was therefore

waived. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1152 (9th Cir. 2004). In addition, the district court did not err here. In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C. D. Cal. 2004). However, in order to "[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based," a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Here, Swartz brought a breach of contract claim against KPMG and referred explicitly to the engagement letter. The authenticity of the letter is not in dispute. Therefore, the letter was properly considered on the 12(b)(6) motions.[8]

The district court also ruled that circumstances alleged in the complaint apart from the engagement letter precluded a finding of reasonable reliance. It highlighted (1) that Moss Adams warned of the likely failure of the BLIPS claim and resigned from preparing Swartz's taxes in October 2000, (2) that KPMG advised that the tax advantages might be disallowed by the IRS around the same time, and (3) that Swartz nevertheless filed his 1999 tax return claiming BLIPS losses and failed to amend it through 2002. While these facts may also undermine Swartz's claim of reasonable reliance, they do

---

[8]DB suggests that we may affirm the reasonable reliance holding on the ground—not considered by the district court—that a separate contract between Swartz and DB contained an express statement of non-reliance. However, because Swartz neither asserted a breach of contract claim against DB nor referenced this document in his complaint, the exception described in the main text does not apply and this material outside the pleadings may not be considered.

not warrant a dismissal under the demanding Rule 12(b)(6) standard. *Jackson*, 353 F.3d at 755 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.") (citation omitted).

In addition, the district court neglected that Swartz essentially claimed two different injuries occurring at different times: First, Swartz seeks to recover substantial fees paid at the outset of the BLIPS dealings in the fall of 1999 in reliance on KPMG's sales pitch (allegedly as an agent and co-conspirator of Presidio and DB) that BLIPS would eliminate his tax burden. Second, Swartz seeks to recover for harms (in the form of back taxes, interest, potential penalties, and other costs) flowing from actually claiming the BLIPS losses on his tax return filed in fall 2000. That warnings about the scheme's unlawfulness began mounting and eventually reached a fever pitch in the fall of 2000 has little to do with the first injury. In other words, even if it became unreasonable to rely on promises of a tax-free future at some point in the fall of 2000, it was not necessarily unreasonable to pay substantial fees in the fall of 1999 in connection with what might have then appeared to be a watertight tax dodge.

Finally, Swartz's proposed amended complaint contained additional allegations that, if proven, could potentially ground a finding of reasonable reliance even with respect to the second set of harms. For example, Swartz sought to add allegations that KPMG assured Swartz that Moss Adams did not understand the complexities of BLIPS and that KPMG remained committed to the viability of the scheme for some period even after its fall 2000 warning.

Presidio and DB argue that we may affirm the dismissal of Swartz's fraud claim on the ground—not addressed by the district court—that Swartz failed to adequately plead any mis-

representations attributable to them. "To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of [Federal] Rule [of Civil Procedure] 8(a)(2)." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). However, where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation omitted). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation, quotations omitted).

Swartz's original complaint included several allegations detailing the time, place, and content of representations made by KPMG and B&W to Swartz. No one disputes that Swartz satisfied his pleading burden with respect to those defendants. Rather, Presidio and DB claim that because the complaint failed to specify any false representations *made by them*, it failed the Rule 9(b) standard. Swartz argues that since DB and Presidio would be liable for the misrepresentations of their co-conspirators, and since he pled a conspiracy, the allegations concerning the KPMG and B&W misrepresentations are sufficient. *See e.g., Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980).

**[8]** First, there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant. "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired

result." *Beltz Travel Service, Inc.*, 620 F.2d at 1367. On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998) (citation, quotation omitted). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

**[9]** With respect to Presidio and DB, the allegations in Swartz's original complaint patently fail to comply with Rule 9(b). The complaint is shot through with general allegations that the "defendants" engaged in fraudulent conduct but attributes specific misconduct only to KPMG and B&W. Conclusory allegations that Presidio and DB "knew that [KPMG and B&W] were making . . . false statements to clients, including Swartz, and thus were acting in concert with [KPMG and B&W]" and "were acting as agents [of KPMG and B&W]" and were "active participants in the conspiracy" without any stated factual basis are insufficient as a matter of law.

**[10]** However, we cannot say on de novo review that the pleading "could not possibly be cured by the allegation of other facts." *Bly-Magee*, 236 F.3d at 1019 (quotation, citation omitted). Indeed, we note that Swartz's proposed amended complaint contained detailed allegations of an agreement between the defendants and the various roles played in the alleged conspiracy. Consequently, although the lack of specificity in Swartz's allegations of fraud provides an independent reason, not relied on by the district court, to affirm its dismissal of Swartz's fraud based claims, that dismissal would necessarily be without prejudice. *Id*.; *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (dismissals under Rule 9(b) are "functional[ly] equivalent" to dis-

missals under Rule 12(b)(6) and should be without prejudice if defects are curable). For the foregoing reasons, we reverse the district court's denial of leave to amend the fraud claim.

## D.   Civil Conspiracy

**[11]** The district court dismissed the civil conspiracy claim on the ground that it was derivative of Swartz's other claims, each of which had been dismissed. Because Swartz is entitled to an opportunity to re-plead the common-law fraud claim, we reverse the denial of leave to amend the civil conspiracy claim as well.

Presidio and DB argue that the civil conspiracy claim fails for lack of specificity in the pleadings. Rule 9(b) imposes heightened pleading requirements where "the object of the conspiracy is fraudulent." *Wasco Prods, Inc. v. Southwall Techs, Inc.* 435 F.3d 989, 991 (9th Cir.) *cert. denied*, 127 S. Ct. 83 (2006). As stated in the previous section, we agree that Swartz failed to sufficiently detail the roles played by the defendants in the alleged conspiracy to defraud. However, we repeat that the defects may be curable and reverse the denial of leave to amend this claim.

## E.   Declaratory Judgment

**[12]** The district court did not err in dismissing Swartz's request for declaratory judgment and we adopt its opinion to that extent. *Swartz I*, 401 F. Supp. 2d at 1154-55 (Section III. E. "Declaratory Judgment").**⁹** To the extent Swartz seeks a declaration of defendants' liability for penalties that may be

---

**⁹**To be clear, we adopt only the district court's reasons for dismissing the declaratory judgment claim with prejudice. We do not adopt those parts of Section III. E. dismissing the common-law fraud and civil conspiracy claims with prejudice. Specifically, we do not adopt the last paragraph in the section beginning with "The above causes of action . . ." *Swartz I*, 401 F. Supp. 2d at 1155.

assessed in the future, the claim is not ripe. To the extent Swartz seeks a declaration of defendants' liability for damages sought for his other causes of action, the claim is merely duplicative and was properly dismissed.

## F.    Personal Jurisdiction

At the motion to dismiss stage, a plaintiff is generally required only to make out a prima facie showing of personal jurisdiction to overcome a 12(b)(2) motion. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002). Even so, mere "bare bones" assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden. *See Alperin v. Vatican Bank*, 410 F.3d 532, 539 n.1 (9th Cir. 2005); *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986).

Appellees are correct that conclusory allegations that "[defendants] directed communication into the U.S. Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over their persons by this Court" are insufficient to establish a prima facie showing of personal jurisdiction. Swartz has pointed to nothing more in his original complaint that would satisfy the requirements of due process.

**[13]** The district court, in its order dismissing Presidio and DB stated that "[b]ecause those . . . defendants were only named in regards to causes of action which are being dismissed with prejudice, there is no point in permitting plaintiff to amend and plead sufficient jurisdictional facts as regards them." *Swartz I*, 401 F. Supp. 2d at 1149. However, because we reverse the district court's denial of leave to amend the common-law fraud and civil conspiracy claims, Swartz may attempt to cure the jurisdictional defects as well. We note that

Swartz's proposed amended complaint contained numerous factually detailed allegations of appellees' contacts with the State of Washington. The sufficiency of those allegations should, of course, be determined by the district court in the first instance.

## G.  Securities Fraud Claims

**[14]** In his proposed amended complaint, Swartz sought to add alternative claims for violations of federal and Washington securities fraud statutes. The district court disallowed these new claims primarily on the ground that it had already held Swartz's original complaint ruled out the possibility of reasonable reliance. Since we reverse the district court's reasonable reliance holding, we also reverse the denial of leave to add the securities fraud claims.

**[15]** The court also noted, but did not reach, B&W's argument that Swartz's federal securities fraud claim was time-barred. The issue has not been raised on appeal and we express no opinion as to whether the claim fails for reasons other than the reasonable reliance holding. Finally, the district court objected that because Swartz's proposed amended complaint sought to disassociate the fraud from the sale of securities in connection with the re-stated RICO claim, he could not simultaneously plead a securities fraud cause of action. However, because "[a] party may . . . state as many separate claims . . . as the party has regardless of consistency," Fed. R. Civ. P. 8(e)(2), denial of leave to add the securities fraud claims on this basis was improper.

## V.  CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal with prejudice of the RICO, WCPA, and declaratory judgment claims. We also adopt in part the district court's opinion in *Swartz I* as described *supra*. We reverse the denial of leave to amend the common-law fraud and civil conspiracy

claims as well as the denial of leave to add statutory securities fraud claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSIS-TENT WITH THIS OPINION. APPELLANT TO RECOVER COSTS ON APPEAL.