**ARKEMA INC., et al., Plaintiffs,**

v.

**ANDERSON ROOFING CO., INC., et al., Defendants.**

**No. CV 09–453–PK.**

United States District Court, D. Oregon, Portland Division.

June 28, 2010.

Stephen T. Parkinson, Groff Murphy, PLLC, Loren R. Dunn, Riddell Williams, William F. Joyce, Salter Joyce Ziker, PLLC, Seattle, WA, David Peter Ashton, Port of Portland, Paul W. Conable, Max M. Miller, Tonkon Torp LLP, Terence L. Thatcher, City Attorney's Office, Patricia M. Dost, Pearl Legal Group, PC, Portland, OR, J. Philip Parks, Parks Bauer Sime Winkler & Fernety, LLP, Salem, OR, Gerald F. George, Pillsbury Winthrop Shaw Pittman LLP, Nicholas W. Van Aelstyn, Beveridge & Diamond P.C., San Francisco, CA, Timothy M. Sullivan, Beveridge & Diamond, PC, Baltimore, MD, for Plaintiffs.

Christopher E. Hawk, Gordon & Rees LLP, Robert I. Sanders, Todd A. Zilbert, Wood Tatum, C. Marie Eckert, Dean D. Dechaine, Brian T. Sniffen, Miller Nash LLP, Portland, OR, Conte C. Cicala, Flynn, Delich & Wise LLP, San Francisco, CA, Donald J. Verfurth, Gordon & Rees LLP, Seattle, WA, Robert H. Foster, U.S. Department of Justice, Denver, CO, for Defendants.

## OPINION & ORDER

MOSMAN, District Judge.

On April 26, 2010, Magistrate Judge Papak issued Findings and Recommendation ("F & R") (# 331) in the above-captioned case recommending that I DENY defendant Anderson Roofing Inc.'s Motion to Dismiss (# 173) on the Seventh and Eight Claims for Relief and reserve ruling on the Fifth and Sixth Claims for Relief. He also recommends that I DENY General Steamship Corp.'s Motion to Dismiss (# 309). Anderson Roofing filed objections (# 335) and plaintiffs responded (# 338).

## DISCUSSION

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F & R to which no objections are addressed. *See Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir.2003). While the level of scrutiny under which I am required to review the F & R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any of the magistrate judge's F & R. 28 U.S.C. § 636(b)(1)(C).

Upon review, I agree with Judge Papak's recommendation, and I adopt the F & R (# 331) as my own opinion. Because I agree with Judge Papak's analysis of the accrual of plaintiffs' claims under ORS section 465.325(6)(c)(B), I also agree with his decision to defer ruling regarding accrual under ORS section 465.325(6)(a). A ruling in Anderson Roofing's favor on those claims would not change the posture of the case, nor would it expand or narrow

Anderson Roofing's potential liability or plaintiffs' available remedies under the Oregon Superfund Act—indeed, such a ruling would not alter this case in any meaningful way. The question of accrual under section 465.325(6)(a) presents an important issue of state law, not yet addressed by the Oregon Supreme Court, for which certification is not appropriate at this juncture under *Western Helicopter Services, Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 811 P.2d 627 (1991). Therefore, I agree with Judge Papak's recommendation to defer ruling unless and until necessary.

Anderson Roofing also argues that, if I agree with Judge Papak's finding that plaintiffs' claims under section 465.325(6)(c)(B) are not time-barred, I should dismiss claims for costs incurred prior to 2006, on the theory that "damages must be limited to those incurred after the date of accrual." (Objections (# 335) 13.) Anderson Roofing cites several cases that limited tort and contract damages to those incurred in the years, per the statute of limitations, immediately preceding the filing of a complaint. (*See id.* at 14.) The cited cases, however, involved *continuing* torts or contract breaches, supporting the unremarkable proposition that where a series of separate acts, dating further back than the statute of limitations period, are at issue, courts will only allow plaintiffs to bring claims or recover damages for those acts that occurred within the statute of limitations period, not those torts or breaches that occurred prior. Here, Judge Papak concluded, and I agree, that plaintiffs' claims under section 465.325(6)(c)(B) are based on a single occurrence, the 2006 Consent Judgment, that took place within six years prior to this suit. Anderson Roofing's request is therefore denied as inapplicable in this action.

Therefore, I adopt the F & R (# 331) as my own opinion and I DENY Anderson Roofing's Motion to Dismiss (# 173) and I DENY General Steamship's Motion to Dismiss (# 309).

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

PAPAK, United States Magistrate Judge:

Plaintiffs in this action seek contribution and recovery of costs related to the environmental cleanup of Portland Harbor. Plaintiffs state ten claims for relief, including claims for contribution, declaratory relief and cost recovery under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607, 9613, claims for contribution and declaratory judgment under the Oregon Superfund Act, Or.Rev. Stat. § 465.325, an Oregon Oil Spill Act claim, Or. Rev. Stat. § 468B.300, and a claim for contribution under the Oil Pollution Act, 33 U.S.C. § 2709.

Defendant Anderson Roofing Company's motion to dismiss is now before the court, as is a motion to dismiss by General Steamship International, Ltd. and General Steamship Corporation (collectively, General Steamship), Anderson Roofing's motion to dismiss (# 173) should be denied and General Steamship's motion to dismiss (# 309) should be denied, for the reasons set forth below.

### BACKGROUND

Ten plaintiffs, including the City of Portland, the Port of Portland and various private entities, pursue the present action, which arises out of the environmental contamination of the Portland Harbor. Plaintiffs' second amended complaint alleges that "[a] long history of commercial shipping activities, industrial and commercial operations, wastes from private and public outfalls and agricultural runoff have released hazardous substances to the Port-

land Harbor." (Second Am. Compl., # 288, ¶ 33.) The Environmental Protection Agency (EPA) has listed the Portland Harbor as a Superfund site. *Id.*

## I. General Allegations

In September 2001, the EPA issued an administrative order that required the plaintiffs to complete a Remedial Investigation and Feasibility Study for the Portland Harbor Superfund Site and to reimburse certain costs incurred by the EPA and the Oregon Department of Environmental Quality (DEQ).[1] *Id.* at ¶ 35. In addition, the order provided that the EPA could bring an action for recovery of response costs for activities related to the Remedial Investigation and Feasibility Study. (Second Am. Compl. Ex. 1, at 24.) The DEQ is not listed among the parties bound by the order. *Id.* at 3.

In April 2006, the EPA amended its administrative order, retitling it "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study." (Second Am. Compl. ¶ 35, Ex. 1, Amd. 2.) The 2006 administrative settlement agreement contains a covenant by the EPA not to sue for response costs related to the Remedial Investigation and Feasibility Study. (Second Am. Compl. ¶ 35, Ex. 1, Amd. 2 at 2.)

In addition, in September 2006, the plaintiffs, among other parties, entered into a Consent Judgment with the DEQ. (Consent Judgment, hereinafter Second Am. Compl. Ex. 2.) In the Consent Judgment, the DEQ covenanted not to sue for past remedial action costs, interim remedial action costs, oversight costs and performance of the Remedial Investigation and Feasibility Study and related work. *Id.* at 14. In exchange for the DEQ's

covenant, the plaintiffs agreed to pay the costs and perform the Study and related work. *Id.*

Plaintiffs have incurred costs to satisfy their obligations with respect to the Remedial Investigation and Feasibility Study under the EPA Settlement Agreement and the Consent Judgment. (Second Am. Comp. at ¶ 37.) Plaintiffs will continue to incur costs until the study is complete. *Id.* In addition, plaintiffs are participating in a non-judicial process with other potentially responsible parties to allocate responsibility for past and future response or remedial action costs. *Id.* at 38.

Plaintiffs filed suit in April 2009. Plaintiffs name General Steamship, among other defendants, in their First, Second, Third and Fourth Claims for Relief, which assert claims under CERCLA, and the Fifth, Sixth, Seventh and Eighth Claims for Relief, which assert claims under the Oregon Superfund Act. Plaintiffs name Anderson Roofing as a defendant in their Oregon Superfund Act claims for relief, but do not assert any federal causes of action against Anderson. Plaintiffs allege jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367 (supplemental jurisdiction) and 33 U.S.C. § 2717(b) (federal jurisdiction over Oil Pollution Act claims). *Id.* at ¶ 31.

## II. Allegations and Evidence Regarding General Steamship's Liability

Plaintiffs allege that General Steamship International is the successor in interest to General Steamship Corporation. (Second Am. Compl. at ¶ 17.) The complaint further alleges that General Steamship "owned chartered, managed, operated or otherwise controlled vessels in the Port-

---

1. The DEQ is the lead oversight agency for conducting upland source identification and cleanup of the Site, while the EPA is the lead agency for conducting investigation and cleanup of the in-water portion of the Site. (Admin. Order on Consent for Remedial Investigation/Feasibility Study, hereinafter Second Am. Compl. Ex. 1, at 4.)

land Harbor" and that it was the operating manager or local shipping agent in Portland Harbor for a number of foreign and domestic vessel owners, operators, or charterers. *Id.*

General Steamship has submitted evidence that it had contracts with the United States government to act as its agent in conducting the business of vessels that the United States assigned to it "from time to time." (Verfuth Decl., #311, Ex. A at 1, Ex. B at 1, Ex. C at 1.) The contracts cover overlapping periods from February 1942 until "six months after cessation of hostilities" (Ex. B, at 1, 8), from August 1942 until June 1950 (Ex. C. at 1, 19), and from June 1951 until July 1956 (Ex. A at 1, 19). The contracts name only one vessel assigned to General Steamship, and that vessel is not mentioned in the complaint in this action.

### A. The Hamilton Victory and the M.C. Meigs

Plaintiffs allege that the General Steamship defendants arranged for the disposal of vessel wastes in the Portland Harbor Superfund Site. *Id.* at 46. Specifically, plaintiffs allege that General Steamship contracted with a transportation company to dispose of wastes at a common oil sump disposal facility that operated at the Site from 1943 until 1959. *Id.* The complaint mentions transportation and disposal of waste generated by work performed on the vessel Hamilton Victory and the vessel W.C. Meigs,[2] and alleges, on information

and belief, that General Steamship made numerous other such arrangements for waste disposal. *Id.* The complaint identifies the wastes involved and alleges that such wastes are present in the sediments at the Portland Harbor Site. *Id.*

General Steamship has submitted "vessel status cards" for the Hamilton Victory (Verfuth Decl., Ex. D) and the General M.C. Meigs (Ex. F). The cards appear to show each operator of a vessel over the course of its existence, and, for each operator, the form of agreement that applied and the dates of operation. Neither the Hamilton Victory nor the General M.C. Meigs vessel card list General Steamship as an operator. The cards, however, indicate that both the Hamilton Victory and the General M.C. Meigs were operated by agents of the U.S., government at various periods from 1943 until 1959.[3]

### B. The Rincon Hills, the Prinsdal and the Charles Crocker

Plaintiffs allege that General Steamship arranged for vessel repair services through private ship repair contractors at over-water dry docks at ship repair yards at the Portland Harbor Site. *Id.* The complaint lists three specific instances of such vessel repair: the T2 tanker Rinkon Hills[4] from 1947–1948, the Prinsdal in 1960 and the Charles Crocker in 1953. The complaint further indicates that the work included hull scraping, paint and sand blasting and the removal of wastes and that the nature of dry dock work at the time was

---

**2.** General Steamship indicates that the plaintiffs likely intended to refer to the vessel General M.C. Meigs.

**3.** The Hamilton Victory operated under a "GAA" form of agreement at several intervals during the relevant time period. A GAA agreement is a "general agency agreement," which is "a contract between the Maritime Administration and a steamship company which, as general agent, exercises administra-

tive control over a government owned ship for employment by the Military Sealift Command." Dictionary of Military and Associated Terms. U.S. Department of Defense 2005, at: http://handle.dtic.mil/100.2/ADA439918. The General M.C. Meigs operated under a GAA in 1946 and 1949.

**4.** Although the complaint identifies the vessel as Rinkon Hills, the vessel card indicates Rincon Hills is the correct spelling.

such that the wastes were likely released into the Site. Finally, the complaint identifies the wastes involved and alleges that such wastes are present in the sediments at the Site.

General Steamship has submitted vessel status cards for the Rincon Hills (Verfuth Decl., Ex. E) and the Charles Crocker (Ex. G), but not the Prinsdal. The Rincon Hill's card appears to show that the U.S. Marine Corps operated it during the first part of 1947, General Steamship operated it in December 1947 under a "custodian" form of agreement and that it was then operated by Deep Sea Tankers. The Charles Crocker's card indicates that it was operated by Coastwest Line from 1951 until October 1953, and then was operated by Reserve Fleet until July 1954, when General Steamship operated it under a GAA form of agreement.

### III. Procedural History

After General Steamship filed a motion to dismiss in September 2009, plaintiffs filed a motion for referral to alternative dispute resolution and an alternative motion to stay proceedings, Anderson then filed its motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim. Several other defendants also filed motions to dismiss.

In a Findings and Recommendation, this court recommended that the court should grant plaintiffs' motion to stay and deny their motion for referral to alternative dispute resolution. (Findings & Recommendation, # 279.) As part of the recommended stay order, the court instructed the plaintiffs to file a second amended complaint and allowed the defendants to file new motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), or to renew their previous motions to dismiss. *Id.*

Although the Findings and Recommendation remains under advisement before Judge Mosman, plaintiffs filed their Second Amended Complaint as instructed in the recommended stay order. This court accordingly denied the pending motions to dismiss as moot in light of the amended complaint but allowed the defendants to renew their earlier motions or to file new Rule 12(b)(6) motions. Anderson Roofing chose to renew its earlier motion to dismiss. General Steamship filed a new motion to dismiss, under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). General Steamship's motion addresses only the CERCLA claims against it and not the Oregon Superfund Act claims.

### LEGAL STANDARDS

#### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss on jurisdictional grounds can be "either facial or factual." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000). Under either form of attack, courts presume that a case "lies outside [its] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Assoc. of Am. Med. Colleges v. United States,* 217 F.3d 770, 778–779 (9th Cir.2000) (citation omitted). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004). In a factual challenge, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment … It also need not presume the truthfulness of the plaintiffs' allegations." *White,* 227 F.3d at 1242.

"Defective allegations of jurisdiction may be amended, upon terms, in trial or appellate courts." 28 U.S.C. § 1653. "Dismissal without leave to amend is improper unless it is clear, upon de novo

review, that the complaint could not be saved by amendment." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n. 6 (9th Cir.2002).

## II. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir.1994). Moreover, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007). Finally, if the court dismisses for failure to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986).

To survive a motion to dismiss for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted). Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir.2009), citing *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

## DISCUSSION

## I. Anderson Roofing's Motion to Dismiss

### A. Supplemental Jurisdiction Over State Law Claims

■ Supplemental jurisdiction exists where state law claims are so related to claims over which the court has federal question jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims form part of the same case or controversy if they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). A federal district court with the power to hear state law claims has discretion to decline to keep those claims under the conditions set out in 28 U.S.C. § 1367(c). *Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir.1997) (en banc). Under § 1367(c), a court may decline to exercise supplemental jurisdiction if: 1) the claim raises a novel or complex issue of state law; 2) the claim substantially predominates over the federal claims; 3) the court has dismissed all of the federal claims, or 4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Where a district court is called on to invoke its direction under § 1367, it must provide reasons for its decision to decline jurisdiction. *See Acri*, 114 F.3d at 1001, n. 3. The court must look to whether the case falls under one of the four enumerated circumstances under § 1367(c). *Executive Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1558 (9th Cir.1994) overruled on other grounds by *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1092 (9th Cir.2008). Second, the court must consider whether its decision to decline jurisdiction serves the values of

economy, convenience, fairness and comity. *Acri*, 114 F.3d at 1001.

■ Here, the plaintiffs have not stated any federal claims against Anderson Roofing and Anderson Roofing contends that the court should decline to exercise supplemental jurisdiction over the Oregon Superfund Act claims against it because the applicable statute of limitations presents a novel issue of state law. Even if the Oregon Superfund Act claims pose a novel issue of state law, however, the values of economy and convenience weigh heavily in favor of retaining jurisdiction over the state law claims against Anderson Roofing. Although this case remains in the early stages, the number of parties and the interrelated nature of the claims favors keeping it in one piece. Moreover, the Oregon Superfund Act claims against some defendants rely on the same allegations as the CERCLA claims against those defendants. A dismissal of the state law claims would waste judicial resources and inconvenience the parties. As a result, the court should retain supplemental jurisdiction over the Oregon Superfund Act claims, including those against Anderson Roofing.

## B. Statute of Limitations

Plaintiffs' Oregon Superfund Act claims rest on Oregon Revised Statute sections 465.325(6)(a) and 465.325(6)(c)(B). Section 465.325(6)(a) provides that "any person may seek contribution from any other person who is liable or potentially liable" for remedial action costs. Or.Rev.Stat. §§ 465.255; 465.325(6)(a). Under section 465.325(6)(c)(B), "[a] person who has resolved its liability to the state for some or all of a removal or remedial action or for some or all of the costs of such action in an administrative ... settlement may seek contribution from any person who is not party to a settlement." Or.Rev.Stat. § 465.325(6)(c)(B).

Here, the parties dispute whether plaintiffs' Oregon Superfund Act claims are timely. The parties agree that "an action upon a liability created by statute" must be commenced within six years. Or. Rev. Stat. § 12.080(2). The six year period starts to ran when the claim accrues. Or. Rev.Stat. § 12.010. The parties disagree, however, over when plaintiffs' claims accrued.

■ A plaintiff does not have a cause of action for contribution under the Oregon Superfund Act until the DEQ has determined that some removal or remedial action is required. *McDonald v. Sun Oil Co.*, 548 F.3d 774, 785 (9th Cir.2008) (affirming district court's dismissal of a claim for contribution under Or.Rev.Stat. § 465.325(6)(a) where the plaintiff made improvements to land despite the DEQ determination that no remedial action was needed); *see also McCallister v. Jones*, 208 Or. 365, 368–369, 300 P.2d 973 (1956) (describing the right to contribution as a present, inchoate right, that is "aroused into life, by *compulsory payment* by one of more than his share of the loss") (emphasis added, citation omitted).

■ Moreover, under Oregon law, "statutory and common-law claims for contribution ... require actual discharge of a common obligation before a cause of action accrues." *Abney–Revard, Inc. v. Assoc. Materials, Inc.*, 05–528, 2007 WL 1467302, at *1, 2007 U.S. Dist. LEXIS 37012, at *2–3 (D.Or. May 17, 2007) citing *Guild v. Baune*, 200 Or.App. 397, 403, 115 P.3d 249, 253 (2005). Thus, the statute of limitations does not begin to run until the plaintiff has paid more than his proportion of the debt. *Durbin v. Kuney & Sayers*, 19 Or. 71, 75, 23 P. 661 (1890) (where plaintiff paid off one note, which constituted his share of a common debt comprised of two notes, the claim for contribution regarding the paid-off note was not untimely because plain-

tiff's cause of action did not accrue until later, when he paid the defendant's share of the debt).

The cases above indicate that a plaintiff does not have a cause of action for contribution under the Oregon Superfund Act until: 1) the DEQ has determined that removal or remedial action is required; and 2) the plaintiff has incurred more than its share of the cost of the removal or remedial action. In addition, a plaintiff seeking contribution under section 465.325(6)(c)(B), must also have "resolved its liability to the state for some or all of a removal or remedial action or for some or all of the costs of such action." Or.Rev. Stat. § 465.325(6)(c)(B).

■ Here, based on the foregoing, I find that the earliest date that plaintiff's claims under section 465.325(6)(c)(B) could have accrued is September 2006, not at the time of the 2001 EPA administrative order, The 2001 EPA order did not resolve plaintiffs' liability to the state because the DEQ was not a party to the order and, at any rate, the order provided that the plaintiffs could still be sued for costs. In contrast, the DEQ is a party to the September 2006 consent judgment and agreed not to sue the plaintiffs in exchange for their agreement to pay certain costs and perform work related to the Remedial Investigation and Feasibility Study. Thus, even if plaintiffs incurred costs prior to 2006, they had not resolved their liability to the state (in total or in part), before the 2006 DEQ consent judgment. Thus, because plaintiffs filed suit in 2009, within six years of the 2006 DEQ consent judgment, I find that their claims under section 465.325(6)(c)(B) are timely.

I make no finding, however, regarding whether plaintiffs' claims under section 465.325(6)(a) are timely. There is little practical effect of the distinction between section 465.325(6)(c)(B) and 465.325(6)(a) because the substance of plaintiffs' action is one for contribution under the Oregon Superfund Act. The court will equitably apportion liability in the same manner, regardless of which section applies, because a contribution action under 465.325(6)(c)(B) provides the same remedy as a contribution action under 465.325(6)(a). Under either claim, the court allocates remedial action costs among liable parties in accordance with factors set out in Oregon Revised Statute section 465.257. Or.Rev.Stat. §§ 465.325(a), 465.257.[5] Thus, Anderson will remain as a defendant, subject to the same liability, regardless of whether the 465.325(6)(a) claims by the private entities are timely.

This court's proposed stay order allowed the defendants to challenge the sufficiency of the pleadings to determine whether they could get out of the case at this early stage rather than participate in, or wait for the completion of, the non-judicial allocation process, Even if the section 465.325(6)(a) claims are untimely, Anderson's motion does not succeed in either removing it from the case, or limiting its potential liability. As a result, the court need not decide the issue at this time.

### C. Summary

The court should retain supplemental jurisdiction over the Oregon Superfund Act claims and find that, at a minimum,

---

5. Moreover, all of the Port of Portland and the City of Portland Oregon Superfund Act claims are timely. The statute of limitations set out in section 12.080 "shall not apply to actions brought in the name of the state, or any county, or other public corporation there-in, or for its benefit." Or. Rev. Stat. § 12.250. Anderson does not dispute that City of Portland and the Port of Portland are "public corporations" entitled to the statute of limitations exemption in section 12.250.

plaintiffs' claims under section 465.325(6)(c)(B) of the Act are timely, As a result, the court should deny Anderson's motion to dismiss the Oregon Superfund Act claims for lack of jurisdiction and deny Anderson's motion to dismiss the section 465.325(6)(c)(B) claims (Seventh and Eighth Claims for Relief). The court should decline to reach Anderson's motion to dismiss the remaining Oregon Superfund Act claims (Fifth and Sixth Claims for Relief) because a ruling on those claims has no practical significance.

## II. General Steamship's Motions to Dismiss

### A. Whether the Court Lacks Jurisdiction to Hear Plaintiff's CERCLA Claims

#### 1. Propriety of General Steamship's Rule 12(b)(1) Motion

Plaintiffs contend that General Steamship's Rule (b)(1) motion is improper because it violates the court's recommended stay order. Plaintiffs accurately note that the stay order specifies that the court will entertain Rule 12(b)(6) motions to dismiss. Moreover, the Rule 12(b)(1) motion asserts new arguments that General Steamship did not raise in its earlier motion to dismiss and relies in part on new evidence submitted in conjunction with the motion.

The court should entertain the motion. Even if General Steamship is permitted to bring its Rule 12(b)(1) motion, however, the motion lacks merit, as explained further below. As a result, hearing the motion does not result in an injustice to any party.

#### 2. Merits of General Steamship's Rule 12(b)(1) Motion

■ Federal Rule of Civil Procedure 9(h) "permits pleading of claims for relief that are 'within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground.'" *Mission Bay Jet Sports, LLC v.*

*Colombo,* 570 F.3d 1124, 1126 n. 1 (9th Cir.2009) (citing Fed. R. Civ. P. 9(h)). In that situation, a plaintiff may invoke either the court's admiralty and maritime jurisdiction or some other basis for federal subject matter jurisdiction. 2 Moore's Federal Practice–Civil § 9.09 (2010). Moreover, where a plaintiff has an independent basis of federal subject matter jurisdiction for his claims, his claims are not "cognizable only in admiralty" and plaintiff's "election to invoke jurisdiction on the 'law side' of the court (as opposed to the 'admiralty side,') ... precludes [the court from] treating his ... claims as admiralty claims under Rule 9(h)." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1559 (9th Cir.1987) (holding that district court did not err when, after it dismissed plaintiff's federal Jones Act claim, it dismissed the remaining pendent claims because plaintiff did not assert admiralty as the basis for the court's jurisdiction over those claims).

Here, to the extent that General Steamship argues that this court lacks jurisdiction over the claims against it merely because plaintiffs failed to plead their claims under admiralty jurisdiction, that argument lacks merit. Plaintiffs have alleged claims under CERCLA and thus properly elected to invoke an independent basis for federal subject matter jurisdiction. The court should therefore deny General Steamship's motion to dismiss for lack of subject matter jurisdiction.

### B. Motion to Dismiss for Failure to State a Claim

#### 1. Whether the Suits in Admiralty Act Defeats Plaintiffs' CERCLA Claims Against General Steamship

Under the Suits in Admiralty Act, a plaintiff in an admiralty action cannot bring a claim against a party who acted as an agent or employee of the United States.

*See Watts v. Pinckney,* 752 F.2d 406, 409 (9th Cir.1985). The Act provides, "[i]f a remedy is provided by this chapter, it shall be the exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States or the federally-owned corporation whose act or omission gave rise to the claim." 46 U.S.C. § 30904. Here, General Steamship argues that the Suits in Admiralty Act precludes plaintiffs' CERCLA claims against it.

■ General Steamship's motion requires that the court take notice of facts outside of the pleadings. General Steamship contends that the Suits in Admiralty Act applies because the suit falls under the court's admiralty jurisdiction and because it acted as an agent of the United States during the periods alleged in the complaint. A private entity under contract with the United States to operate a public vessel is an agent of the United States if: 1) the United States exercised significant control over the private entity's activities, and 2) the private entity was engaged in conducting the business of the United States. *Dearborn v. Mar Ship Operations, Inc.,* 113 F.3d 995, 998 (9th Cir., 1997). The complaint, however, does not contain factual allegations that suggest General Steamship acted as an agent of the United States.

As noted above, in ruling on a 12(b)(6) motion, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz,* 476 F.3d at 763. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b), When the parties submit other extrinsic evidence, the court in its discretion must decide whether to convert the motion to dismiss to a motion for summary judgment. *Garaux v. Pulley,* 739 F.2d 437, 438 (9th Cir.1984). The court may not treat a Rule 12(b)(6) motion as one for summary judgment unless the nonmoving party has a "reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Garaux,* 739 F.2d at 439.

■ Here, General Steamship has submitted extrinsic evidence that is not properly subject to judicial notice. The evidence does not conclusively establish that General Steamship acted as an agent for the United States during the periods addressed in the Second Amended complaint. The contracts submitted by General Steamship do not identify the vessels named in the complaint. In addition, the vessel cards submitted by General Steamship do not prove that the vessels at issue were operated under the control of the United States and were conducting the business of the United States during the entirety of the relevant time period.

General Steamship, however, argues that the Suits in Admiralty Act deprives this court of jurisdiction and that, as a result, the court may review and weigh extrinsic evidence under Rule 12(b)(1) standards. As noted above, however, this court has jurisdiction because plaintiff has plead CERCLA claims. Moreover, even in a Rule 12(b)(1) motion, a court should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.,* 711 F.2d 138, 139 (9th Cir.1983) (citation omitted). Here, assuming General Steamship's argument addresses this court's jurisdiction, the issue

is intertwined with the merits because CERCLA provides both the basis for federal subject matter jurisdiction and the plaintiffs' substantive claim for relief. *See Safe Air,* 373 F.3d at 1039–1040.

Thus, General Steamship's motion to dismiss fails because it has not established proper factual support for it at this juncture. General Steamship has, at most, raised questions of fact that are more properly addressed in a motion for summary judgment. Plaintiffs, however, have not had an opportunity to present evidence pertinent to General Steamship's motion because this court has recommended a stay order to allow the on-going non-judicial allocation process to move forward. In fact, I declined the United States' request to file a motion to dismiss, and instructed it to file its motions when the stay order is lifted. The court should therefore deny General Steamship's motion to dismiss to the extent that General Steamship argues the Suits in Admiralty Act bars plaintiffs' CERCLA claims.

### 2. Sufficiency of the CERCLA Allegations

■ To establish a claim for cost recovery or contribution under CERCLA, a claimant must sufficiently allege: 1) that the defendant is a potentially responsible party under § 9607(a); 2) a release or threatened release of hazardous material occurred 3) the release occurred at a facility as that term is defined under § 9601(9); and 4) the release or threatened release caused the plaintiff to incur response costs that were necessary under CERCLA, *See Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1152 (9th Cir.1989) (citations omitted).

Here, General Steamship argues that the complaint fails to allege sufficient facts to state a claim under CERCLA because it does not allege that General Steamship owned or operated a private vessel and because it does not allege facts to suggest that General Steamship's actions resulted in the contamination of the Portland Harbor. Although General Steamship's motion does not address the specific elements of a CERCLA claim, it focuses on the allegation that General Steamship is a potentially responsible party and that it caused a release or threatened release. My analysis therefore focuses on those elements.

#### i. Potentially Responsible Party Under § 9607(a)

■ "CERCLA imposes strict liability for environmental contamination upon four broad classes" of potentially responsible parties. *Burlington Northern & Santa Fe Ry. v. United States,* —— U.S. ——, 129 S.Ct. 1870, 1878, 173 L.Ed.2d 812 (2009). (citing 42 U.S.C. § 9607(a)(1)-(4)). Section 9607(a)(3) extends liability to:

... any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances ...

42 U.S.C. § 9607(a)(3). "An entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern & Santa Fe Ry.,* 129 S.Ct. at 1880 (reversing Ninth Circuit decision affirming district court's bench trial holding that the defendant arranged for disposal of a hazardous substance when it sold the substance and delivered it to the site but took steps to reduce the likelihood of spills). Thus, liability would attach "if an entity were to enter into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance." *Id.* at 1876.

Plaintiffs allege that General Steamship is liable as an arranger under 42 U.S.C. § 9607(a)(3). Moreover, the complaint alleges sufficient facts to support that allegation because it states that General Steamship contracted with a transportation company to dispose of wastes at a common oil sump disposal facility that operated at the Site from 1943 until 1959. Thus, plaintiffs have properly pled arranger liability.

### ii. Release or Threatened Release of a Hazardous Substance

"[T]he operative event creating a liability under CERCLA is the release or threatened release of a hazardous substance." *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1082 (9th Cir. 2006) (affirming district court's denial of defendant's motion to dismiss for failure to state a claim in part because the case did not present an extraterritorial application of CERCLA where a release occurred in the United States). A plaintiff, however, "need not allege the particular manner in which a release or threatened release occurred in order to make out a prima facie claim." *Ascon*, 866 F.2d at 1153. In *Ascon*, the Ninth Circuit reversed the trial court's dismissal of plaintiffs CERCLA allegations for failure to state a claim because the plaintiff alleged "some facts" to accompany its recitation of the elements of a CERCLA claim. *Id.* at 1156. Specifically, the plaintiff specified the location, size and history of ownership of the property, that the property had been declared a hazardous waste site and the kinds of toxic wastes involved, and "perhaps most important, . . . the various dates on which the . . . defendants deposited hazardous wastes onto the property." *Id.* at 1157; *see also United States v. Washington Dept. of Transp.*, 665 F.Supp.2d 1233, 1236, 1242 (W.D.Wash.2009) (CERCLA complaint was sufficient where it stated that the defendant moved hazardous sub-

stances when it conducted dredging of a particular waterway from 1902 until 1949, permitted others to perform dredging between 1975 and 1983, and deposited the dredged material in specific locations where it could cause further contamination).

Here, the complaint contains sufficient factual content to establish that a release occurred that involved General Steamship. The complaint specifies the location of the release as the oil sump facility and the Portland Shipyard, identifies the kinds of waste involved and indicates that the wastes have been found in sediments at the site. In addition, the complaint sets forth the various dates on which General Steamship used the oil sump facility or the dry dock services. Therefore, I conclude that plaintiffs have alleged sufficient facts to state a CERCLA claim against General Steamship. The court should accordingly deny General Steamship's motion to dismiss.

### C. Summary

The court should entertain General Steamship's Rule 12(b)(1) motion and deny the motion. The court should also deny General Steamship's Rule 12(b)(6) motion. General Steamship may renew its arguments concerning the Suits in Admiralty Act if those arguments remain pertinent after the court lifts the proposed stay order and the parties have an opportunity to conduct discovery.

### CONCLUSION

The court should deny Anderson's motion to dismiss (# 173) the Oregon Superfund Act claims for lack of jurisdiction and deny Anderson's motion to dismiss the section 465.325(6)(c)(B) claims (Seventh and Eighth Claims for Relief). The court should reserve ruling on Anderson's motion to dismiss (# 173) the remaining Ore-

gon Superfund Act claims (Fifth and Sixth Claims for Relief). The court should deny General Steamship's motion to dismiss (# 309).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.